SEAN M. SULLIVAN (State Bar No. 229104)
  seansullivan@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone: (213) 633-6800/(213) 633-8644
Fax: (213) 633-6899

MARCIA B. PAUL (admitted pro hac vice)
  marciapaul@dwt.com
LANCE KOONCE, III (admitted pro hac vice)
  lancekoonce@dwt.com
CAMILLE CALMAN (admitted pro hac vice)
  camillecalman@dwt.com
DAVIS WRIGHT TREMAINE LLP
1633 Broadway
New York, New York 10017
Telephone: (212) 489-8230/(212) 603-6427
Fax: (212) 489-8340

Attorneys for Defendants and Counter-Plaintiffs Taco Bell Corp. and FCB Worldwide, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| POQUITO MAS LICENSING CORPORATION, a California Corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>TACO BELL CORP., a California Corporation; FOOTE, CONE & BELDING ADVERTISING, INC., aka FCB or DraftFCB; and DOES 1 through 10, inclusive,<br><br>                Defendants.<br><hr>TACO BELL CORP., a California Corporation, and FCB WORLDWIDE, INC.,<br><br>                Counter-Plaintiffs,<br><br>        vs.<br><br>POQUITO MAS LICENSING CORPORATION, a California Corporation, and KEVIN MCCARNEY, an individual,<br><br>                Counter-Defendants. | Case No. **SA CV13-01933 DOC (JPRx)**<br>Assigned to the Hon. David O. Carter<br>**FCB WORLDWIDE, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Date:**  **January 26, 2015**<br>**Time:** **8:30 a.m.**<br>**Crtrm.:** **9D**<br><br>**<u>REDACTED PUBLICLY FILED VERSION</u>**<br><br>Action Filed December 13, 2013 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION / SUMMARY OF ARGUMENT .................................... 1

II. ARGUMENT ................................................................................................ 3

    A. FCB Is Not Directly Liable Because It Has Not Used LIVE MÁS In Commerce ................................................................................... 3

    B. FCB Is Not Liable for Contributory Infringement .............................. 8

III. CONCLUSION ........................................................................................... 11

i

FCB'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
DWT 25581484v2 0064285-000078

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

**Cases**

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*,
    414 F.3d 400 (2d Cir. 2005) ............................................................................. 5

*Fin. Express LLC v. Nowcom Corp.*,
    564 F. Supp. 2d 1160 (C.D. Cal. 2008) ............................................................ 5

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
    76 F.3d 259 (9th Cir. 1996) ............................................................................. 3

*Gibson Guitar Corp. v. Viacom International Inc.*,
    2013 WL 2155309 (C.D. Cal. May 17, 2013) ............................................ 9, 10

*In re Advertising & Marketing Development, Inc.*,
    821 F.2d 614 (Fed. Cir. 1987) .......................................................................... 7

*Lepton Labs, LLC v. Walker*,
    2014 WL 4826164 (C.D. Cal. Sept. 23, 2014) ............................................ 1, 7

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
    591 F. Supp. 2d 1098 (N.D. Cal. 2008) ............................................................ 8

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) ................................................................*passim*

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) .......................................................................... 10

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
    354 F.3d 1020 (9th Cir. 2004) .......................................................................... 5

*Rescuecom Corp. v. Google Inc.*,
    562 F.3d 123 (2d Cir. 2009) ....................................................................*passim*

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ......................................................................................... 2

ii

FCB'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
DWT 25581484v2 0064285-000078

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Statutes**

15 U.S.C. § 1127 ....................................................................................................... 5, 6

**Other Authorities**

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
   (4th ed.) ................................................................................................................ 7

iii

FCB'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
DWT 25581484v2 0064285-000078

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## I. INTRODUCTION / SUMMARY OF ARGUMENT

Poquito Mas does not dispute that in order to be liable for direct infringement, a party must use a trademark in commerce in connection with that party's own business. Pl. Br. at 13. Courts have traditionally held that, consistent with the express language and the underlying purpose of the Lanham Act, the "use in commerce" must be one that signifies the origin and source of one's own goods or services to the consuming public. Init. Br. at 4-10.

Poquito Mas is correct that *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2d Cir. 2009) and *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137 (9th Cir. 2011), have extended this line of cases to include Internet service providers who do not use trademarks to signify their own goods and services, but rather use marks in commerce, in connection with their own business activities – in particular, selling the right to use those marks to others as keywords to trigger internet searches that may ultimately cause marketplace confusion. But Poquito Mas presses this extension of the law too far.

Under the reasoning in *Rescuecom* and *Network Automation*, there may well be acts in which a service provider, including an advertising agency, might engage that would constitute the use of a client's trademark for the provider's own business that could ultimately cause public confusion, and thus constitute a use in commerce. Indeed, *Lepton Labs, LLC v. Walker*, 2014 WL 4826164 (C.D. Cal. Sept. 23, 2014), on which Poquito Mas also relies, appears to represent such a case, as there the court found that a claim for relief may be stated for direct infringement against a company that, to serve its own business purposes, sells the trade dress of one client to another for the second client's use. That is not this case. If *Rescuecom* and *Network Automation* are to be extended to allow direct infringement claims against an advertising agency that provides the traditional advertising services of merely creating content for a client incorporating that client's trademark, without *either*

1

FCB'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
DWT 25581484v2 0064285-000078

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

putting the content into commerce itself *or* using it to signify its own goods or services, then the line between primary and secondary trademark infringement liability would be totally obliterated.

Primary liability is premised on an affirmative act of using a mark (or a confusingly similar mark) in commerce to signify source or origin. Secondary liability, on the other hand, is premised on control, inducement, and/or direct financial benefit by the secondary actor, depending on the species of the secondary claim. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984) ("[V]icarious liability is imposed in virtually all areas of the law, and the concept of contributory infringement is merely a species of the broader problem of identifying the circumstances in which it is just to hold one individual accountable for the actions of another."). The extension of the existing law that Poquito Mas seeks in this case flies in the face of these basic principles of secondary liability, which inherently acknowledge differing levels of culpability; it also runs **contra** to both the express language and the underlying purpose of the Lanham Act, which is to prevent *public* confusion or deception. Even the court in *Rescuecom*, which did not rule out the possibility of an "internal" act constituting a use in commerce, recognized that such an act had to *result* in marketplace confusion in order to be actionable. 562 F.3d at 130. An advertising agency creating copy for its client is not "selling" that copy in commerce, as Google and other ISPs are selling trademarks as search terms to competitive companies. The advertising agency transaction is a private one and the mark is not used in commerce unless and until **the client** makes its own decision to use it on commerce to signify **the client's** goods and services.

Of course, as noted, in any given case, if the secondary actor has sufficient control or provides the public forum for the use, secondary liability may attach, assuming other prerequisites for the claim are met. In order for contributory liability – the only form of secondary liability pressed by Poquito Mas here – to attach, however, the secondary actor must have induced the primary actor to infringe or have

2

FCB'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
DWT 25581484v2 0064285-000078

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

knowledge of the infringement and control over the infringing activity. In this case, plaintiff concedes it cannot show inducement, and relies on the "extent of control" theory of contributory infringement, arguing that the mere fact that FCB produced commercials for Taco Bell's consideration, pursuant to Taco Bell's direction and control, with knowledge of the existence of Poquito Mas, constitutes contributory infringement.

Yet here, the agency agreement, the testimony, and the custom and practice in the advertising agency world, all clearly set the bounds between the respective roles of the agency and the client. The client was in control of the budget, the creative choices, and most importantly for present purposes, the decision to release the advertising to the public, in commerce, to signify the client's products or service. Nor can FCB be said to have the requisite knowledge of the alleged infringement, given the advice from counsel that use of the LIVE MÁS tagline would *not* infringe,

Of course, there can be no secondary liability absent a primary infringement in the first instance. *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-65 (9th Cir. 1996). And, as set forth in Taco Bell's motion for summary judgment, in which FCB joins, LIVE MÁS does not infringe Poquito Mas's trademarks. For that same reason, even assuming *arguendo* a basis for primary liability against FCB, it is entitled to summary judgment on any such claim.

Against that backdrop, we assess below Poquito Mas's unsuccessful effort to create an issue of fact to defeat FCB's motion for summary judgment.

## II.   ARGUMENT

### A.   FCB Is Not Directly Liable Because It Has Not Used LIVE MÁS In Commerce

Poquito Mas does not dispute that, in the context of the LIVE MÁS tagline, FCB's actions were those of a typical advertising agency – it helped conceive of the tagline, and then created multiple forms of advertising including that tagline which, once approved by Taco Bell, ran in various media. With the exception of two

3

FCB'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
DWT 25581484v2 0064285-000078

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  descriptive blog posts about a single event, plaintiff does not even suggest that FCB had any more direct involvement in the use of the tagline than any other advertising agency would for any large client. In essence, Poquito Mas asks this Court to find that all advertising agencies heavily involved in their client's advertising campaigns can be held directly liable for alleged trademark infringement by their clients, where the agency helped develop the advertising in which the purportedly infringing mark appears. PM Opp. Br. at 17.

Plaintiff advances this extraordinary extension of current law based ***not*** on cases involving advertising agencies, but rather internet service providers, and specifically the question of whether those ISPs' sale of a registered trademark as a keyword search term for Internet searches can constitute a "use in commerce." Opp. Br. at 12-15 (*citing Rescuecom*, 562 F.3d 123, *and Network Automation*, 638 F.3d 1137). These cases, in particular *RescueCom*, expanded the traditional scope of the "use in commerce" requirement for trademark infringement to reach contemporary online activities where, if those uses had not been found to be within the scope of the Lanham Act, the defendants "would be free to use trademarks in ways designed to deceive and cause consumer confusion." 562 F.3d at 130. Importantly, the Courts in these cases rested their decisions on the ISP's actual use of the marks ***in commerce in connection with their own business activities***. The uses in issue directly impacted the public marketplace and could therefore implicate the underlying statutory purpose of avoiding public deception. In stark contrast, even if the advertising services provided by FCB nominally involved a "use" of the LIVE MÁS tagline (by insertion in commercials), it was not a use "in commerce" under the Lanham Act because it was not for FCB's own business purposes, *and* the public would never see or know about that use *unless* Taco Bell made the intervening decision to release the commercial to the public in commerce.

Analysis of the facts in *Rescuecom* and the reasoning of the Second Circuit in that case illustrate the limitations of that decision and why it does not apply here. The

4

FCB'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
DWT 25581484v2 0064285-000078

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

issue there was whether Google, by selling other parties' trademarks to those parties' competitors as keywords for its AdWords advertising program, such that when consumers used the keyword as a search term the competitor's ad would appear, was using those trademarks in commerce.[1]  The Second Circuit applied the definition of "use in commerce" from 15 U.S.C. § 1127, which states that the term "means the *bona fide* use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark" and that "a mark shall be deemed to be in use in commerce" for services "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce. . . ."  The Court applied this definition in accordance with its prior decision in *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir. 2005), but distinguished Google's use from what it had held was not a trademark use in *1-800*, where defendant's software program allegedly triggered advertising based on the plaintiff's website address, not based on plaintiff's trademark; that is, plaintiff's trademark was technically never "used" by defendant at all—the first of the three predicates for primary liability.

Reversing the lower court's dismissal of the complaint and finding that plaintiff had adequately pleaded use in commerce, the Second Circuit emphasized the difference between the cases:

> First, in contrast to *1-800*, where we emphasized that the defendant made no use whatsoever of the plaintiff's trademark, here what Google is recommending and selling to its advertisers is Rescuecom's trademark. Second, in contrast with the facts of *1-800* where the defendant did not "use or display," much less sell, trademarks as

---

[1] In most cases involving keyword searches, the party being charged with infringement is not the online service provider such as Google, but a party that has itself purchased the keyword of a competitor in order to drive traffic to the party's own good or services, as in the *Network Automation* case.  *See also Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1024 (9th Cir. 2004); *Fin. Express LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160, 1173 (C.D. Cal. 2008).

5

FCB'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
DWT 25581484v2 0064285-000078

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

> search terms to its advertisers, **here Google displays, offers, and sells Rescuecom's mark** to Google's advertising customers **when selling its advertising services**. In addition, Google encourages the purchase of Rescuecom's mark through its Keyword Suggestion Tool. Google's utilization of Rescuecom's mark fits literally within the terms specified by 15 U.S.C. § 1127. According to the Complaint, Google uses and sells Rescuecom's mark "in the sale ... of [Google's advertising] services ... rendered in commerce." § 1127.

*Rescuecom*, 562 F.3d at 129 (emphasis added).[2] Thus, Google not only used the marks, but used them in commerce *and* used them to sell its own advertising services.

The *Rescuecom* Court did *not* hold, as Poquito Mas suggests, that Google "used the mark 'in commerce' when it employed the plaintiff's mark to advertise the services of *another*." PM Opp. Br. at 13 (emphasis in original). Rather: "Google displays, offers, and sells Rescuecom's mark to Google's advertising customers when selling *its* advertising services." 562 F.3d at 129 (emphasis added). Similarly, in the *Network Automation* case, the Ninth Circuit held that "Network's use of the

---

[2] In an appendix to the decision expressly identified as "*dictum*" (which Poquito Mas misleadingly cites to as if it were the Court's holding), the Court traced the history of the "use in commerce" requirement in the Lanham Act, ultimately concluding that the 15 U.S.C. § 1127 definitional language could be interpreted in two ways, "neither of which is entirely satisfactory." *Id.* at 140 (*dictum*). First, one could read the definition as not applying to infringement at all, but only to registration; second, one could split the two sentences of the section and read the first ("'use in commerce' means the bona fide use of a mark in the ordinary course of trade") as applying only to registration, and the second ("used or displayed in the sale or advertising of services . . . .") as applying to both registration and infringement. *Id.* at 132 (*dictum*). The Court concluded that the better approach was the latter, although it urged that Congress "clear up this ambiguity." *Id.* at 140-41. Thus it concluded – in *dictum* – that the governing approach to "use in commerce" for infringement purposes is to determine whether the mark is used or displayed in the sale or advertising of services rendered in commerce. To the extent that – in *dictum* – it identified a higher standard for use in commerce for registration, as Poquito Mas argues, that higher standard is that for registration a party must also show a "bona fide use of a mark in the ordinary course of trade."

FCB'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
DWT 25581484v2 0064285-000078

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

mark to purchase keywords to advertise *its* products for sale on the Internet" was a use in commerce. 638 F.3d at 1144 (emphasis added).

This focus on the use of the marks in connection with the alleged infringer's own business is what distinguishes these cases from the facts in the instant case. It is also what brings these cases in full accord with the cases cited in *McCarthy* to the effect that, as between an agency and client, typically the client is the holder of any trademark created pursuant to the agency's services because only the client uses the mark in commerce in connection with its goods and services. *See* FCB Init. Br., at 5-8 (*citing* 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition ("*McCarthy*") § 16:39 (4th ed.)). The contrasting use a mark for an agency's **own** purposes was the distinguishing factor in *In re Advertising & Marketing Development, Inc.*, 821 F.2d 614 (Fed. Cir. 1987), and in *Lepton*, 2014 WL 4826164, where the agencies used trademarks to shop their own services to clients. *See* Init. Br., at 6, 8-9.

Even if *Rescuecom* and similar cases somehow create a broader scope of liability for "use in commerce" beyond the keyword search context, they do not stand for the proposition that all claims for contributory trademark infringement now merge with direct infringement claims. But that is what Poquito Mas seems to be arguing. PM Opp. Br. at 13. Poquito Mas offers proof only that FCB "participated" in *Taco Bell*'s advertising of *Taco Bell*'s goods and services incorporating the LIVE MÁS tagline. *Id.* at 16-17. Plaintiff does not identify *any* activities of FCB that constitute either use or for its own business activities (such as selling its services to clients), or use in its own goods or services to signify the source of those goods or services to the public, or indeed any use that was or could be perceived by the public, independent of Taco Bell's use in advertising.

The only acts Poquito Mas even argues constitute the use of LIVE MÁS to advertise FCB's own services are two blog posts by an FCB executive in the "News" section of FCB's website describing the events surrounding production of a

7

FCB'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
DWT 25581484v2 0064285-000078

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

television commercial FCB produced for Taco Bell. PM Opp. Br. at 16. One of those blog posts does not even mention the LIVE MÁS tagline. In the other post, there is a single reference to a helicopter landing pad "emblazoned with the Live Mas logo." *Id.* There can be no more clearly descriptive use of the LIVE MÁS tagline than this; it is simply not a trademark use by FCB. The fact that this lone blog post is the only "evidence" Poquito Mas can muster that even remotely constitutes a use of the LIVE MÁS tagline *by FCB*, demonstrates that FCB has not used the tagline for its own purposes. Of course, FCB produced creative content for Taco Bell, but that is not use in commerce, and it is not a use in connection with FCB's own business activities. In short, there is a complete absence of any material facts precluding summary judgment on Poquito Mas's direct trademark infringement claim against FCB.

## B. FCB Is Not Liable for Contributory Infringement

In its attempt to find a genuine issue of fact as to FCB's purported liability for contributory infringement, Poquito Mas tacitly concedes that it cannot demonstrate that FCB intentionally induced Taco Bell to infringe. *See* Opp. Br. at 17-18 (acknowledging intentional inducement and "extent of control" theories of contributory liability); *id.* at 18-20 (addressing only the "extent of control" theory). Accordingly, the only issue is whether Poquito Mas can demonstrate a genuine dispute of fact as to whether FCB had "actual or constructive knowledge of third-parties' direct infringement" ***and*** "'[d]irect control and monitoring of the instrumentality used by the third party to infringe the plaintiff's mark.'" *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098, 1111 (N.D. Cal. 2008) (citation omitted).

Poquito Mas fails at satisfying either prong, let alone both. In arguing that FCB had actual knowledge of Taco Bell's purported infringement, Poquito Mas points to (1) FCB's awareness of Poquito Mas; (2) FCB's request that Taco Bell not use an earlier alternate tagline, "Live a Little Más"; and (3) Poquito Mas's

8

FCB'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
DWT 25581484v2 0064285-000078

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"objections to Taco Bell's proposed uses of the Live Más or LALM taglines." Opp. Br. at 18. But *none* of those purported facts demonstrates that FCB had actual knowledge of Taco Bell's purported infringement based on the use of the LIVE MÁS tagline. The most that can be said, based on those purported facts, is that Poquito Mas objected and continues to object to the use of the tagline. But its objection cannot translate into FCB's knowledge of infringement, when *undisputed* facts demonstrate that all of the attorneys consulted agreed that the LIVE MÁS tagline did not infringe on any of Poquito Mas's marks. *See* Init. Br. at 11; Taco Bell Init. Br. at 4, 18-19; Taco Bell Reply Br. at 17-22.

Poquito Mas has also failed to adduce proof to create a jury question on whether the level of FCB involvement with the LIVE MÁS tagline constitutes the requisite "direct control" necessary for contributory infringement. The full extent of the factual support Poquito Mas offers is what FCB has itself readily admitted—it creates advertisements for Taco Bell. *See* Opp. Br. at 20.[3] But Poquito Mas has not identified any issue of fact tending to show that FCB's control over the infringement is sufficient to find contributory liability as a matter of law. The Court's reasoning in *Gibson Guitar Corp. v. Viacom International Inc.*, 2013 WL 2155309 (C.D. Cal. May 17, 2013), cited by Poquito Mas, is instructive. In that case, Viacom licensed its SPONGEBOB trademarks to its co-defendant JHS, an instrument manufacturer. *Id.* at *1. Plaintiff brought a direct infringement claim against the manufacturer based on the use of its "Flying V" trademarks, and a contributory liability claim against Viacom, based on its license of the SPONGEBOB trademarks. *Id.* As the Court noted, "Viacom's

---

[3] Poquito Mas also argues that "FCB also acknowledges in its motion that it had the power to issue a final refusal on the use of the Live Más Mark." Opp. Br. at 19. That argument is made without citation to any factual record, or even a page reference to FCB's Initial Brief. The undisputed facts demonstrate that it was *Taco Bell*, not FCB, that had final say on the use of the LIVE MÁS tagline. FCB SUF ¶¶ 19-21. Plaintiff appears to be conflating its misplaced indemnity argument (*i.e.*, who would indemnify whom if Taco Bell used "Live a Little Más"), with control of use of *any* mark by Taco Bell to advertise its restaurants.

9

FCB'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
DWT 25581484v2 0064285-000078

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

'service'—the SPONGEBOB trademarks—appears on the infringing product itself. . . . [I]nstead of providing the means for consumers to purchase the infringing product, the infringing product bears Viacom's SPONGEBOB marks, which presumably create at least a part of the product's appeal." *Id.* at *5.

In concluding that the plaintiff had failed to plead a claim for contributory trademark infringement, the Court noted that "[a]lthough there are steps Viacom could take to prevent allegedly infringing products from being manufactured, marketed, and sold, these steps do not have a direct connection to the infringement itself; JHS can infringe independently of anything Viacom might do. Combined with the court's finding, above, that Plaintiff has not alleged that Viacom has taken any affirmative steps to induce JHS to infringe, the court finds that Plaintiff has not alleged facts sufficient to state a claim for Viacom's contributory infringement." *Id.*

The same analysis is applicable here. It is undisputed that both the final say on the advertising itself, and media in which the advertising appeared, were under Taco Bell's control, not FCB's. FCB SUF ¶¶ 19-21. Any *public* release of commercials with the tagline was totally within the control of Taco Bell. And pursuant to FCB's Agreement with Taco Bell, ███████████████████████████████ ███████████████████ *Id.* ¶ 14. Thus, assuming *arguendo* that the LIVE MÁS tagline infringes Poquito Mas's marks, no matter what services FCB provides to Taco Bell, Taco Bell may, to paraphrase the *Gibson* Court, infringe independently of anything FCB might do. *See also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (no contributory liability because plaintiff "has not alleged that Defendants have the power to remove infringing material from these websites or directly stop their distribution"). The undisputed facts demonstrate that FCB cannot stop Taco Bell's alleged infringement; Poquito Mas has adduced no evidence to the contrary; and FCB may not, therefore, be held liable for contributory infringement on that prong of secondary liability, as well.

FCB'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
DWT 25581484v2 0064285-000078

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

FCB'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
DWT 25581484v2 0064285-000078

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## III. CONCLUSION

For the foregoing reasons and as set forth in FCB's initial supporting papers and in the moving and reply papers submitted by Taco Bell in support of its summary judgment motion (in which FCB joins), FCB respectfully requests that the Court enter summary judgment in its favor on the Second Amended Complaint, and award FCB fees and costs.

DATED: December 29, 2014

DAVIS WRIGHT TREMAINE LLP
SEAN M. SULLIVAN
MARCIA B. PAUL (admitted pro hac vice)
LACY H. KOONCE, III (admitted pro hac vice)
CAMILLE CALMAN (admitted pro hac vice)

By: /s/ Sean Sullivan
Sean M. Sullivan

Attorneys for Defendants and Counter-Plaintiffs TACO BELL CORP. and FCB WORLDWIDE, INC.

11

FCB'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
DWT 25581484v2 0064285-000078

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899