SEAN M. SULLIVAN (State Bar No. 229104)
  seansullivan@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800/(213) 633-8644
Fax:  (213) 633-6899

MARCIA B. PAUL (admitted pro hac vice)
  marciapaul@dwt.com
LANCE KOONCE, III (admitted pro hac vice)
  lancekoonce@dwt.com
CAMILLE CALMAN (admitted pro hac vice)
  camillecalman@dwt.com
DAVIS WRIGHT TREMAINE LLP
1633 Broadway
New York, New York  10017
Telephone:  (212) 489-8230/(212) 603-6427
Fax:  (212) 489-8340

Attorneys for Defendants and Counter-Plaintiffs Taco Bell Corp. and
FCB Worldwide, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| POQUITO MAS LICENSING CORPORATION, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TACO BELL CORP., a California Corporation; FOOTE, CONE & BELDING ADVERTISING, INC., aka FCB or DraftFCB; and DOES 1 through 10, inclusive,<br><br>Defendants.<br>_____<br>TACO BELL CORP., a California Corporation, and FCB WORLDWIDE, INC.,<br><br>Counter-Plaintiffs,<br><br>vs.<br><br>POQUITO MAS LICENSING CORPORATION, a California Corporation, and KEVIN MCCARNEY, an individual,<br><br>Counter-Defendants.<br>_____ | Case No. **SA CV13-01933 DOC (JPRx)**<br>Assigned to the Hon. David O. Carter<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT TACO BELL CORP. FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Date:       January 26, 2015**<br>**Time:       8:30 a.m.**<br>**Crtrm.:     9D**<br><br>**REDACTED PUBLICLY FILED VERSION**<br><br>Action Filed December 13, 2013 |

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION / SUMMARY OF ARGUMENT ................................... 1

II.   POQUITO MAS HAS NOT CREATED A JURY ISSUE ON LIKELIHOOD OF CONFUSION ................................................................. 3

    A.   The Absence of Actual Confusion Is Dispositive Under The Facts of This Case ........................................................................................ 4

    B.   Poquito Mas Has Far Fewer Trademark Rights Than It Claims; Its Trademarks Are Not Entitled to a Wide Scope Of Protection; And Taco Bell's Use of Live Más Does Not Impinge upon Poquito Mas's Narrowly Circumscribed Zone of Protection ........................... 7

        1.   Poquito Mas's "Assignment" Comes Too Late to Confer Standing ........................................................................ 7

        2.   Poquito Mas's Marks Are Conceptually Weak and Their Incontestable Status Is Irrelevant ..................................... 8

        3.   Whether or Not POQUITO MAS Is A Commercially Strong Mark, Taco Bell Has Submitted Sufficient Evidence to Show Plaintiff Operates in a Crowded Field, Further Limiting Its Rights and the Scope of Protection Accorded Its Marks ..................................... 9

        4.   Poquito Mas Does Not Own a "MAS" Mark or a "Family of MAS Marks" ............................................. 10

        5.   Taco Bell Does Not Use "MÁS" as a Trademark, and "MÁS" Is Not the Essence of its Brand .................................. 12

        6.   The Parties' Marks Differ in Sight, Sound, Meaning and Commercial Impression .................................... 13

        7.   Poquito Mas and Taco Bell Both Serve Mexican-Inspired Food but They Are Not Direct Competitors Even in Los Angeles County .................................... 15

    C.   Knowledge of Another's Marks Does Not Equate with Knowledge of Infringement or Indicate Bad Faith ........................... 15

        1.   There Was Nothing "Careless" About Taco Bell's Decision To Adopt The Live Más Tagline ............................. 17

        2.   There Was Nothing "Manufactured", "Pre-Cleared", "Superficial", or "Incompetent" About The Attorneys' Opinions Taco Bell Received Before Adopting The Live Más Tagline ............................. 19

i

TACO BELL'S REPLY IN SUPPORT OF TACO BELL'S
MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

III.   POQUITO MAS HAS NOT CREATED A JURY ISSUE ON THE RELIEF IT SEEKS ................................................................ 20

    A.   Plaintiff's Lack of Non-Speculative Evidence Bars Its Corrective Advertising Claim .............................................. 21

    B.   Plaintiff's Lack of Non-Speculative Evidence Also Bars Its Reasonable Royalty Claim ...................................... 22

    C.   Disgorgement of Taco Bell's Profits Would Result in an Impermissible Windfall .......................................... 24

    D.   There Is No Presumption of Injury for Injunctive Relief .................. 25

IV.   CONCLUSION .......................................................................... 25

ii

TACO BELL'S REPLY IN SUPPORT OF TACO BELL'S
MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*AMF Inc. v. Sleekcraft Boats,*
   599 F.2d 341 (9th Cir. 1979) .......................................................................*passim*

*Art Attacks Ink, LLC v. MGA Entertainment, Inc.,*
   581 F.3d 1138 (9th Cir. 2009) ................................................................ 11

*Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.,*
   --- F. Supp. 2d ---, 2014 WL 4384085 (S.D.N.Y. Aug. 20, 2014) ........................ 5

*Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.,*
   --- F. Supp. 2d ---, 2014 WL 47465 (S.D.N.Y. Jan. 6, 2014) ................................ 5

*Bear U.S.A. v. A.J. Sheepskin & Leather Outerwear,*
   909 F. Supp. 896 (S.D.N.Y. 1995) ........................................................ 20

*Binder v. Disability Grp. Inc.,*
   772 F. Supp. 2d (C.D. Cal. 2011) ........................................................ 21

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.,*
   174 F.3d 1036 (9th Cir. 1999) ........................................................ 4, 17

*Caron Corp. v. Ollendorff,*
   160 F.2d 444 (2d Cir. 1947)........................................................ 11

*CG Roxane LLC v. Fiji Water Co.,*
   569 F. Supp. 2d 1019 (N.D. Cal. 2008) ................................................ 12

*CIT Grp., Inc. v. Citicorp,*
   20 F. Supp. 2d 775 (D.N.J. 1998) ........................................................ 6

*Cohn v. Petsmart, Inc.,*
   281 F.3d 837 (9th Cir. 2002) ........................................................ 9

*Comm. for Idaho's High Desert, Inc. v. Yost,*
   92 F.3d 814 (9th Cir. 1996) ........................................................ 20

*Dahon N. Am., Inc. v. Hon,*
   2012 WL 1413681 (C.D. Cal. Apr. 24, 2012) ........................................ 7

iii

TACO BELL'S REPLY IN SUPPORT OF TACO BELL'S
MOTION FOR SUMMARY JUDGMENT

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
  142 F.3d 1127 (9th Cir. 1998) ........................................................ 8, 13

*Echo Drain v. Newsted*,
  307 F. Supp. 2d 1116 (C.D. Cal. 2003) ........................................... 9, 10

*Entrepreneur Media, Inc. v. Smith*,
  279 F.3d 1135 (9th Cir. 2002) .............................................................. 9

*Fancaster, Inc. v. Comcast Corp.*,
  832 F. Supp. 2d 380 (D.N.J. 2011) ....................................................... 7

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
  925 F. Supp. 2d 1067 (C.D. Cal. 2012) ............................................... 12

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*,
  93 F.3d 774 (Fed. Cir. 1996).................................................................. 8

*Glow Indus. v. Lopez*,
  252 F. Supp. 2d 962 (C.D. Cal. 2002) ............................................... 9, 10

*HGI Marketing Servs., Inc. v. Pepsico Inc.*,
  50 F.3d 14 (9th Cir. 1995) .................................................................... 14

*James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*,
  2013 U.S. Dist. LEXIS 24824 (C.D. Cal. Feb. 21, 2013) ....................... 5

*L'Oreal USA, Inc. v. Trend Beauty Corp.*,
  2013 WL 4400532 (S.D.N.Y. Aug. 15, 2013)......................................... 8

*Libman Co. v. Vining Indus., Inc.*,
  69 F.3d 1360 (7th Cir. 1995) ................................................................. 4

*Lindy Pen Co. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993) ....................................................... 24, 25

*Mars Musical Adventures, Inc. v. Mars, Inc.*,
  159 F. Supp. 2d 1146 (D. Minn. 2001)................................................ 17

*Michael Caruso & Co. v. Estaetan Enters. Inc.*,
  994 F. Supp. 1454 (S.D. Fla. 1998) ..................................................... 17

*Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*,
  856 F.2d 1445 (9th Cir. 1988) ............................................................... 9

iv

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Moose Creek, Inc. v. Abercrombie & Fitch Co.*,
  331 F. Supp. 2d 1214 ................................................................. 10

*Nelson v. City of Davis*,
  571 F.3d 924 (9th Cir. 2009) ....................................................... 22

*Parenting Unlimited, Inc. v. Columbia Pictures Television, Inc.*,
  743 F. Supp. 221 (S.D.N.Y. 1990) ............................................... 17

*Parfumerie Roger & Gallet v. M.C.M. Co.*,
  24 F.2d 698 (2d Cir. 1928) .......................................................... 11

*Personeta, Inc. v. Persona Software, Inc.*,
  418 F. Supp. 2d 1013 (N.D. Ill. 2005) ......................................... 16

*Playtex Prods., Inc. v. Georgia-Pacific Corp.*,
  390 F.3d 158 (2d Cir. 2004) ........................................................ 16

*Polo v. Innoventions Int'l LLC*,
  2014 U.S. Dist. LEXIS 64090 (C.D. Cal. May 1, 2014) ................... 2

*Poquito Mas v. Una Mas, Inc.*,
  2004 WL 240310 (TTAB 2004) ............................................... 8, 14

*Procter & Gamble Co. v. Paragon Trade Brands, Inc.*,
  917 F. Supp. 305 (D. Del. 1995) .................................................... 7

*QS Wholesale, Inc. v. World Marketing, Inc.*,
  2013 WL 1953719, at *6 (C.D. Cal. May 9, 2013) ................. 6, 22, 23

*Quia Corp. v. Mattel Inc.*,
  2011 WL 2749576 (N.D. Cal. July 14, 2011) ............................... 21

*S. Cone, Inc. v. Timex Corp.*,
  2002 WL 34450329 (S.D. Cal. Apr. 10, 2002) .............................. 21

*SEC v. Wilde*,
  2012 WL 6621747 (C.D. Cal. Dec. 17, 2012) (Carter, J.) ............... 21

*Self-Realization Fellowship Church v. Ananda Church of Self-
  Realization*,
  59 F.3d 902 (9th Cir. 1995) ......................................................... 12

TACO BELL'S REPLY IN SUPPORT OF TACO BELL'S
MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*,
    944 F. Supp. 2d 830 (C.D. Cal. 2012) ................................................................ 24

*Star Indus., Inc. v. Bacardi & Co.*,
    412 F.3d 373 (2d Cir. 2005) .............................................................................. 18

*Stark v. Diageo Chateau & Estate Wines Co.*,
    907 F. Supp. 2d 1042 (E.D. Cal. 2012) ............................................................ 15

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
    2013 WL 4528539 (N.D. Cal. Aug. 23, 2013) ............................................ 24, 25

*Sweats Fashions, Inc. v. Pannill Knitting Co.*,
    833 F.2d 1560 (Fed. Cir. 1987) ......................................................................... 16

*Trovan, Ltd. v. Pfizer, Inc.*,
    2000 WL 709149 (C.D. Cal. May 24, 2000) ..................................................... 18

*Union Carbide Corp. v. Ever-Ready Inc.*,
    531 F.2d 366 (7th Cir. 1976) .............................................................................. 5

**Statutes**

15 U.S.C.
    § 1060(a)(3) .......................................................................................................... 7
    § 1117 (Lanham Act § 35(a)) ............................................................................ 24

**Rules**

L.R. 56-3 ................................................................................................................... 2

**Other Authorities**

*Intellectual Property Today*, Dec. 2012, at 6-8 ........................................................ 5

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
    (4th ed.) ....................................................................................................... *passim*

James T. Berger, "Frequently Asked Questions About Trademark
    Surveys," ............................................................................................................... 5

vi

TACO BELL'S REPLY IN SUPPORT OF TACO BELL'S
MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION / SUMMARY OF ARGUMENT

Stripped of the camouflage of irrelevancies and mischaracterizations in plaintiff's opposition to this motion, a few simple facts emerge that demonstrate defendants Taco Bell and FCB are entitled to summary judgment:

- In the three years of coexistence between Poquito Mas and its restaurants operating under that name on the one hand, and Taco Bell's use of the LIVE MÁS tagline in its commercials on the other, there has been a complete absence of any actual confusion in the marketplace; the only survey evidence in this case reaches that same conclusion.

- The proliferation of uses of the common Spanish word "mas" for Mexican restaurants – as demonstrated by websites pages, pictures, and menus from those restaurants – evidences a crowded "mas" field in which Poquito Mas is but a bit player.

- When Poquito Mas challenged the UNA MAS mark used by a California Mexican restaurant chain, the TTAB got it right in concluding that Poquito Mas does not own the exclusive right to use the word "mas" for Mexican restaurants, and that "mas" is not the dominant part of its composite marks.

- Poquito Mas has far fewer trademark rights than it claims because of the invalidity of its post-hoc assignment, the non-trademark use of many of its claimed "mas" marks, and its misrepresentations to the USPTO.

- Because Poquito Mas does not have secondary meaning in the "mas" component, it does not have a protectable "family of MÁS Marks."

- Taco Bell does not use "más" as a trademark and "mas" is not the "essence" of its brand. Its brand and the name of its restaurants is the well-known TACO BELL; the tagline it uses in advertisements is LIVE MÁS.

TACO BELL'S REPLY IN SUPPORT OF TACO BELL'S
MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

- The CEO of Taco Bell made the decision to proceed with the LIVE MÁS tagline based on the advice of his General Counsel, who in turn relied on detailed opinions from three experienced trademark lawyers.

- Poquito Mas cannot create a jury question on actual damages or its entitlement to corrective advertising based solely on litigation expenses, which is the only competent evidence it offers in support of those remedies.

- There were no extensive negotiations between Poquito Mas and Taco Bell, no exchange of offers and demands from which the value of a license could be established, and Poquito Mas has no history of licensing its trademarks except as part of an unallocated franchise fee, so an award of reasonable royalties would be wholly speculative and impermissible.

- Disgorgement of profits would result in an equally impermissible windfall and there is no principled basis for such an award on the facts of this case.

In response to those straightforward propositions, fully supported by the record, plaintiff posits a host of immaterial "facts" on the apparent theory that if it creates enough smoke, the Court will assume there must be a material issue of fact someplace in the mix. It also employs several other diversionary tactics, as follows.

First, plaintiff fails to provide a road map to allow the Court to separate the wheat from the chaff: it fails to respond on a paragraph-by-paragraph basis to Defendants' Statement of Undisputed Facts ("SUF"), offering only its own 195-paragraph statement of so-called Genuine Disputes of Material Fact ("DMF"). For that reason alone, defendants' SUF should be deemed admitted. Local Rule 56-3; *see also Polo v. Innoventions Int'l LLC*, 2014 U.S. Dist. LEXIS 64090, 5-6 (C.D. Cal. May 1, 2014) (where submission did not "directly respond to the facts presented in the SUF" but rather offered plaintiff's own list of purported material facts, court found submission "non-responsive" to SUF under Local Rule 56-3). Even if the Court were to parse plaintiff's submission here to try to determine which so-called disputed facts are intended to counter defendants' SUF, it is clear that the vast majority of

2

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

plaintiff's submissions are neither material nor relevant to the issues at hand.[1]

Second, Poquito Mas engages in a level of mischaracterization of the record that oversteps the bounds of even zealous advocacy.   That is evident from the opening paragraph of its Memorandum of Points and Authorities ("Pl. Br."). Plaintiff posits six "facts" that are simply untrue: (1) Taco Bell had *not* "already identified [Poquito Mas] as a competitor"; (2) Taco Bell did *not* identify Poquito Mas as having "preexisting and superior rights in a family of Mas marks"; (3) Taco Bell did *not* receive a warning from its counsel that using "Mas" would pose a significant risk; (4) Taco Bell did *not* try to "deceive" Poquito Mas into licensing "its Mas marks;" (5) Poquito Mas does *not* have "Mas' marks"; and (6) Taco Bell did *not*, when Poquito Mas objected, "brazenly proceed [ ] 'Butch Cassidy Style'" to swamp the market. Rather it jettisoned the plan to proceed with the mark to which McCarney had objected. Plaintiff cannot create disputed facts simply by making them up.

As shown below, despite its diversionary tactics, Poquito Mas has not identified a jury question that would preclude summary judgment for Taco Bell (and FCB which has moved for summary judgment in reliance on the arguments herein).

## II.  POQUITO MAS HAS NOT CREATED A JURY ISSUE ON LIKELIHOOD OF CONFUSION

Poquito Mas acknowledges that the *Sleekcraft* factors are not a template on which each box must to be checked in favor of defendants before they can prevail on summary judgment. Pl. Br. at 9. To try to shift focus from the key factors in a reverse confusion case – strength of plaintiff's marks, similarity of the marks, and proximity of the goods – Poquito Mas claims a breadth of trademark rights it simply does not possess, and argues Taco Bell is making trademark use of marks it does not use. Applying the relevant *Sleekcraft* factors to the marks actually in issue, it becomes

---

[1] Plaintiff also makes entire legal arguments in its Evidentiary Objections not found in its brief in a transparent attempt to circumvent the page limitations; entire sections of its brief recite supposed facts without reference to defendants' SUF or its own DMF; and other sections cite to paragraphs of its DMF that say no such thing.

3

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

clear that Taco Bell's use of LIVE MÁS does not violate any of Poquito Mas's rights

## A.    The Absence of Actual Confusion Is Dispositive Under The Facts of This Case

Fundamentally, the trademark laws are designed to protect the public from confusion. The ultimate goal of the "likelihood of confusion" test is to identify circumstances where there is a real chance of consumer deception. Thus, evidence that consumers have *already* been confused by use of a junior mark can be "potent," if not always determinative. As a corollary, the absence of proof of actual confusion should also be "weighed heavily" in the analysis "when the particular circumstances indicate such evidence should have been available." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979). "We cannot think of more persuasive evidence that there is no *likelihood* of confusion between these two marks than the fact that they have been simultaneously used for five years without causing any consumers to be confused as to who makes what." *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp*., 174 F.3d 1036, 1050 (9th Cir. 1999) (*citing Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1361 (7th Cir. 1995) ("Vining sold several hundred thousand of the allegedly infringing brooms, yet there is no evidence that any consumer ever made such an error; if confusion were likely, one would expect at least one person out of this vast multitude to be confused ....")). Here, that "one person" does not exist.

Poquito Mas has no answer for the complete absence of any evidence of confusion in the market in the nearly three years that Taco Bell has used its LIVE MÁS tagline widely in national advertising, other than to cite generalized language from case law that absence of such proof is not dispositive. Elsewhere, Poquito Mas trumpets the reach and expense of Taco Bell's advertising campaign (*see* DWF ¶¶ 119-131), but not here, because it well knows that the nonexistence of even a single, anecdotal report of any consumer, anywhere, at any time, believing that Poquito Mas's goods or services are connected with Taco Bell, is damning.

While it is true that actual confusion may be hard to prove – especially where

TACO BELL'S REPLY IN SUPPORT OF TACO BELL'S
MOTION FOR SUMMARY JUDGMENT

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the junior use has only recently commenced – this is precisely why properly-conducted likelihood of confusion surveys are critical in infringement cases. *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 382 (7th Cir. 1976).  As a matter of law, failure to conduct a survey leads to a presumption that the results of such a survey would be unfavorable. *James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, 2013 U.S. Dist. LEXIS 24824, at *15 (C.D. Cal. Feb. 21, 2013). To try to avoid that presumption, plaintiff argues it could not afford a survey (Pl. Br. at 16), and that defendants' survey is flawed because despite a 60% recognition level among consumers, LIVE MÁS has not "saturated" the market (PM Evid. Obj. at 10).

First, plaintiff's cries of poverty are false. Poquito Mas is not the small operation it pretends to be, having combined gross revenues of ▒▒▒▒▒▒ annually. McCarney Decl. ¶ 53. More to the point, it has spent well in excess of ▒▒▒▒ on experts in this case.[2] McCarney claims a survey would have cost $100,000 (*Id* ¶ 88), but cites no source for his inflated estimate. Although an in-person "intercept" survey can be expensive,[3] online surveys can be conducted much more efficiently,[4] for as little as $20,000. *See* James T. Berger, "Frequently Asked Questions About Trademark Surveys," *Intellectual Property Today*, Dec. 2012, at 6-8. Clearly, plaintiff had the resources for a survey, but made a strategic choice not to conduct

_____

[2] Plaintiff's damages expert, Scott Phillips (▒▒▒▒▒▒), ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ Declaration of Camille Calman ("Calman Decl."), Ex. 131 at 67:3-12**.** Plaintiff's marketing expert, Bruce Silverman (▒▒▒▒▒▒), who did not do a survey, ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ than $20,000. *Id.*, Ex. 132 at 162:22-163:14. Expert Larry Chiagouris (▒▒▒▒▒▒), who criticized Taco Bell's survey but did not conduct his own, produced a 24-page report; ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ Declaration of Larry Chiagouris filed Dec. 22, 2014. Plaintiff also produced but withdrew a report by another expert ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒. *Id.* ¶ 10.

[3] Even intercept surveys need not cost $100,000: recently, a federal court approved an application for costs including a three-state "intercept" survey that cost $56,000. *Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, --- F. Supp. 2d ---, 2014 WL 47465, at *3 (S.D.N.Y. Jan. 6, 2014) (describing survey); *Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, --- F. Supp. 2d ---, 2014 WL 4384085, at *6 (S.D.N.Y. Aug. 20, 2014) (approving survey cost).

[4] "An internet survey is faster and less expensive than mall intercept or telephone surveys." 6 *McCarthy* § 32:165.25, at 32-409.

TACO BELL'S REPLY IN SUPPORT OF TACO BELL'S
MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

one presumably because it feared (or knew) the results. Absent a survey, the actual confusion factor is presumed to favor Taco Bell.

Adding to that presumption, Taco Bell *did* conduct a survey and it shows there is no confusion. The only new challenge to the survey plaintiff raises[5] – only in its evidentiary objections (PM Evid. Obj. at 10-11) – is that the tagline has not "saturated" the market and thus a reverse confusion survey is inappropriate. Poquito Mas cites 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th ed.) ("*McCarthy*"), which says that in a reverse confusion case, consumers must first have been "exposed to the relatively large advertising and promotion of the junior user that is the hallmark of a reverse confusion case." PM Evid. Obj. at 10 (*citing id* § 23:10, at 23-71 to -72). "It is Professor McCarthy's opinion that surveys ... [i]n a situation where the junior user [] has not yet commenced massive use of its name and there has been no advertising or promotion of products and services under that name reverse confusion cannot be measured because the triggering event of market place saturation has not yet occurred." *CIT Grp., Inc. v. Citicorp*, 20 F. Supp. 2d 775, 792 (D.N.J. 1998) (finding a saturated market and allowing reverse confusion survey). Plaintiff concludes that a survey is thus "meaningless" where the market is not "<u>fully</u> saturate[d]" by the mark. PM Evid. Obj. at 10 (emphasis added).

From this leap, plaintiff claims the market is not fully saturated because the tagline has only reached 58% awareness in the relevant public. Yet elsewhere, plaintiff uses such awareness to demonstrate the tagline's ***pervasiveness***, stating for instance that "Taco Bell saturated the United States with its infringing MÁS mark to the extent that as of 2013 64% of Taco Bell's customers associated the MÁS marks with Taco Bell and not Plaintiff." Pl. Br. at 22. Plaintiff also notes Taco Bell has spent millions of dollars on national ads with the tagline since February 2012.[6]

---

[5] Poquito Mas's other criticisms of Taco Bell's survey are fully addressed in the Declaration of Itamar Simonson, dated December 13, 2014.

[6] This Court rejected a motion in limine in *QS Wholesale, Inc. v. World Marketing, Inc.*, 2013 WL 1953719, at *6 (C.D. Cal. May 9, 2013) ("*Quiksilver*").

6

TACO BELL'S REPLY IN SUPPORT OF TACO BELL'S MOTION FOR SUMMARY JUDGMENT

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DMF ## 119-131. Plaintiff cannot have it both ways. It puts forth absolutely no basis for the notion that an approximate 60% recognition of the tagline in 2013 renders an *Eveready* reverse confusion survey "meaningless," and in *Fancaster, Inc. v. Comcast Corp.*, 832 F. Supp. 2d 380, 392-93 (D.N.J. 2011), the court found "saturation" based on national advertising exposure far less extensive than Taco Bell's advertising here.

**B.    Poquito Mas Has Far Fewer Trademark Rights Than It Claims; Its Trademarks Are Not Entitled to a Wide Scope Of Protection; And Taco Bell's Use of Live Más Does Not Impinge upon Poquito Mas's Narrowly Circumscribed Zone of Protection**

**1.    Poquito Mas's "Assignment" Comes Too Late to Confer Standing**

As a threshold matter, Poquito Mas had no standing to sue for infringement of GET POQUITO MAS OUT OF LIFE, I AM THE MAS, and MINI MAS, as those marks had not been assigned to it in writing (as required by statute, 15 U.S.C. § 1060(a)(3)) when it filed suit or, for that matter, when it filed its Second Amended Complaint. "As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue." *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305, 310 (D. Del. 1995); *Dahon N. Am., Inc. v. Hon*, 2012 WL 1413681, at *8 (C.D. Cal. Apr. 24, 2012) ("A party lacks standing to sue for trademark infringement if it does not own the trademark at issue. There must be ownership at the time the suit was filed. A subsequent assignment conferring ownership, even if purported to be retroactive, cannot cure a defect in standing.") (citations omitted).

Poquito Mas relies on its belated trademark assignment, executed after the close of discovery in this case, claiming that it has standing to assert claims based on the marks covered by that assignment because the assignment is in writing, and because a written assignment is not necessary to transfer common-law trademark

---

Dkt. ## 195 & 280), to exclude a reverse confusion survey on the same grounds where defendant had allegedly spent only $100,000 in advertising.

7

rights.  Pl. Br. at 8 n.2.  The first argument misses the point:  the assignment, written though it may be, is dated December 12, 2014, by law too late to give plaintiff any retroactive rights.  *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 779 (Fed. Cir. 1996); *L'Oreal USA, Inc. v. Trend Beauty Corp.*, 2013 WL 4400532, at *11 (S.D.N.Y. Aug. 15, 2013).  The second argument is based on 3 *McCarthy* § 18.4, at 18-12 to 18-13, which states, "If there is no documentary evidence of an assignment, it may be proven by the clear and ***uncontradicted*** oral testimony of a person in a position to have actual knowledge." (Emphasis supplied.)  Here, McCarney himself ***already contradicted*** any such testimony; he testified on June 30, 2014 that the existing license agreement had not been amended or supplemented – a fact confirmed in an interrogatory response. Taco Bell SUF ## 12-15.

### 2. Poquito Mas's Marks Are Conceptually Weak and Their Incontestable Status Is Irrelevant

The key issue in the strength-of-mark analysis, and one of the three "pivotal" *Sleekcraft* factors in a reverse confusion case, is whether the mark is coined and fanciful or arbitrary. *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998). If so, it is entitled to a high degree of protection. Init. Br. at 10. Suggestive and descriptive marks, in contrast, are not entitled to broad protection. *Id.*

A fanciful mark is a made-up word like "KODAK" or "EXXON." An arbitrary mark, such as "APPLE" for computers or "CAMEL" for cigarettes, is a mark with no relation to the goods or services to which it is applied.  Plaintiff argues that "MAS" falls into the "arbitrary" category, rather than "suggestive" as defendants maintain, because the word "more" allegedly has nothing to do with Poquito Mas's products. Putting aside that "MAS" is not the trademark at issue, this argument is unpersuasive to anyone who has ever wanted or asked for "more" or "a little more" food either at home or in a restaurant.[7]  *See Kevin T. McCarney dba Poquito Mas v. Una Mas, Inc.*,

---

[7]  Poquito Mas makes the connection between its marks and its restaurant services even more obvious on its website. Sullivan Decl. Ex. 12 ("Poquito Mas® means 'a little more' and we always give you a little more than anyone else.").

8

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2004 WL 240310, at *3 (TTAB 2004) ("little more" is hardly an arbitrary term when applied to restaurant services). Poquito Mas's name suggests a benefit its restaurant will provide (just as the marks of its competitors MUCHO MAS and UNA MAS suggest they will provide "much more" and "one more").

Plaintiff alternatively argues that its marks are distinctive since they were registered without secondary meaning and/or have become incontestable. Pl. Br. at 11. But mere distinctiveness is not enough to prevail in a reverse confusion case; conceptual strength is required. *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 987 (C.D. Cal. 2002); *Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1124 (C.D. Cal. 2003). Nor does incontestable status create a presumption that the marks are strong, as plaintiff contends.  The case it cites, *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 n.3 (9th Cir. 2002), says exactly the opposite. Incontestable marks may be strong **or** weak, and are entitled to **no** presumption of strength.  *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988).

### 3. Whether or Not POQUITO MAS Is A Commercially Strong Mark, Taco Bell Has Submitted Sufficient Evidence to Show Plaintiff Operates in a Crowded Field, Further Limiting Its Rights and the Scope of Protection Accorded Its Marks

Plaintiff claims that Poquito Mas's commercial success – whatever the level[8] – does not matter because Taco Bell is a much bigger company. Pl. Br. at 12-13. But reverse confusion cases nearly always involve a smaller senior user and a larger junior user. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 841 (9th Cir. 2002).  Courts do not simply award the "commercial strength" factor to the party with the smaller advertising budget. The analysis is more nuanced, as illustrated by *Echo Drain*: "[a]lthough Echo Drain presented evidence that Defendants' mark is commercially stronger, this does not end the analysis of this *Sleekcraft* factor because the Court

---

[8] Contrary to plaintiff's claim (Pl. Br. at 12), Taco Bell has not admitted that Poquito Mas is a commercially strong mark, but rather pointed out that plaintiff's expert so testified, and noted that even if he was wrong, commercial weakness would not weigh in plaintiff's favor because it operates in a crowded field.  Init. Br. at 12.

9

TACO BELL'S REPLY IN SUPPORT OF TACO BELL'S MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

must compare the commercial strength of the Defendant's mark with the conceptual strength of the Echo Drain mark." 307 F. Supp. 2d at 1125; *see also Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1224-26 (defendant was well-known retailer with over 500 stores nationwide, and plaintiff was smaller wholesaler; despite its large scale, the commercial strength factor favored defendant).

Plaintiff also claims that the numerous uses of "mas" for Mexican restaurants should not play in the analysis of the strength of its mark because, it claims, none of defendant's evidence of third-party usage is competent. Pl. Br. at 12. But in the cases plaintiff cites, the ***only*** evidence defendant submitted was third-party trademark registrations. Even assuming plaintiff's authorities are right (*see, contra, Glow Indus.*, 252 F. Supp. 2d at 973-74, 990 (finding a "crowded field" on the basis of many other registrations for beauty products containing the word GLOW)), Taco Bell relies on over 1,500 pages of internet printouts showing exactly how marks containing "MAS" are being used by restaurants and encountered by consumers, including photos of storefronts and store signage; social media pages; restaurant menus; and images of food wrappers (Sullivan Decl. Ex. 35) – exactly the kind of proof courts have relied on in other "crowded field" cases. *See Moose Creek*, 331 F. Supp. 2d at 1224-25 (relying on Internet advertisements for clothing bearing moose images); *Echo Drain*, 307 F. Supp. 2d at 1124 (relying on proof that "more than 500 other music groups use the term 'echo' in their names, album titles, and song titles").

### 4.     Poquito Mas Does Not Own a "MAS" Mark or a "Family of MAS Marks"

According to Poquito Mas, "Taco Bell's use of MÁS is highly similar to the numerous MÁS marks owned by plaintiff." Pl. Br. at 14. But the only similarity it points to is the word "mas", and it does not own a registration for "mas" standing alone in the restaurant services category or in any other category – as evidenced by the numerous other registrations including "mas" for restaurant services and other related food and beverage categories.  Calman Decl. Exs. 116 & 117.  As the Second

10

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Circuit has explained, "when less than the whole of a plaintiff's mark is used by a defendant, in order to sustain a charge of infringement, 'it must appear that the part … taken identifies the owner's product without the rest.'" *Caron Corp. v. Ollendorff*, 160 F.2d 444, 445 (2d Cir. 1947) (quoting *Parfumerie Roger & Gallet v. M.C.M. Co.*, 24 F.2d 698, 699 (2d Cir. 1928)). What has allegedly been taken is the word "mas" and plaintiff has presented nothing that remotely suggests that a substantial number of purchasing consumers, not to speak of the majority of them nationwide, recognize "mas" – standing alone – as identifying Poquito Mas's restaurant services.

For the same reason, Poquito Mas does not own a "family of MAS Marks" and cannot protect the word "mas" on that basis. Plaintiff essentially ignores Taco Bell's showing that to prove a family of marks, a trademark owner must show more than the existence of a series of marks sharing a common characteristic; it must also show that the purchasing public recognizes that characteristic as indicating a common source. Init. Br. at 8-9. It pays lip service to the need to show what the purchasing public thinks – *not* by citing to a secondary meaning survey, the usual method for proving a family of marks (*Art Attacks Ink, LLC v. MGA Entertainment, Inc.*, 581 F.3d 1138, 1145-47 (9th Cir. 2009), but by invoking "printed publications" (Pl. Br. at 14)[9] and the claim that "defendants' own counsel has admitted" that Poquito Mas has a family of marks (Pl. Br. at 14) based on an email from one of FCB's lawyers,[10] neither of which proves anything about the perceptions of the purchasing public.

Poquito Mas also tries to bolster its claim to a monopoly over "mas" by claiming that it has trademark rights in a series of phrases including "mas", not

---

[9] For these "printed publications", Poquito Mas cites PM SUF # 49, which has nothing to do with the issue. Apparently, plaintiff meant to cite to McCarney Decl. ¶ 49, which relies on Exhibits 23, 24, and 26, Facebook and Twitter postings and articles. Plaintiff makes no effort to demonstrate which, if any, of these random materials show that the public thinks of "Poquito Mas" when they hear "MAS."

[10] As that lawyer explained, she did no investigation into whether Poquito Mas had a family of marks; she merely expected it would make that claim, based on McCarney's multiple registrations containing the word MAS. Calman Decl. Ex. 125 at 39:13-43:7.

11

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

registered as trademarks, that occasionally appear on its website such as "Get a Little MÁS out of Lunch," "MÁS Social," "MÁS Local," and "Think MÁS".  Pl. Br. at 2. Many of these purported marks are purely descriptive; Poquito Mas uses the phrase "MAS Local" to identify its use of local ingredients, and "MAS Social" to encourage people to visit its social media pages. But a phrase used merely in a descriptive manner is not a trademark absent evidence that consumers use it as a source identifier.  *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 910 (9th Cir. 1995); *see CG Roxane LLC v. Fiji Water Co.*, 569 F. Supp. 2d 1019, 1030 (N.D. Cal. 2008) (a phrase can be descriptive even if it only refers to a single characteristic or property of the goods or services).  Poquito Mas offers no evidence whatsoever that these phrases are used *as trademarks* – that either Poquito Mas or any of its customers uses them as source identifiers to identify the origin of Poquito Mas's restaurant services. *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 925 F. Supp. 2d 1067, 1072 (C.D. Cal. 2012).  Consequently, these assorted, descriptive uses of "mas" add nothing to Poquito Mas's trademark rights.

### 5. Taco Bell Does Not Use "MÁS" as a Trademark, and "MÁS" Is Not the Essence of its Brand

Not only does plaintiff incorrectly claim exclusive ownership of the word "mas," it also incorrectly claims that Taco Bell has adopted a "MÁS" trademark, endlessly repeating that Taco Bell uses, or intended to use, a "MÁS" mark. *See, e.g.*, Pl. Br. at 4 ("a new MÁS slogan), 11 ("Strength of Parties' Respective MÁS Marks"), 13 ("Taco Bell's use of MÁS as its slogan), 17 ("the proposed MÁS slogans); DMF ## 85, 86, 102.  Poquito Mas exceeds the bounds of advocacy to make this point, erroneously contending that:

- Taco Bell's CEO, Greg Creed, said "MÁS" was "the essence of the Taco Bell brand."  Pl. Br. at 6.  In fact, what Creed said was that "*LIVE MÁS*"

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

was the essence of the brand.[11]  PM SUF # 138.

- Creed said, in a speech he gave, "We feed people's lives with MÁS.  MÁS flavor.  MÁS heart.  MÁS value." In fact, those are descriptive uses, not trademark uses, of the word.

- Taco Bell considers the word "MÁS" to be rooted in the company's history. DMF # 66. In fact, the witness testified that "LIVE MÁS" is rooted in Taco Bell's history.  Blakely Decl. Ex. 48 at 106:5-108:5.

- FCB supposedly approached Poquito Mas for "permission to use MÁS" (Pl. Br. at 4-5). In fact, Santoni and later Fox of FCB actually approached McCarney seeking a co-existence agreement under which Taco Bell would use "LIVE A LITTLE MÁS" (SUF # 83).

As the record makes overwhelmingly clear, Taco Bell uses "LIVE MÁS."  It does not use "MÁS" standing alone as a mark any more than Poquito Mas does. That it occasionally uses it in a descriptive sense (as in Creed's speech above) does not create trademark rights or infringe the rights of another. Owning a trademark does not prohibit others from ***any*** use of the words in the mark: "[a] junior user is always entitled to use a descriptive term in good faith in its primary, descriptive sense other than as a trademark." 2 *McCarthy* § 11:45, at 11-136.

### 6.  The Parties' Marks Differ in Sight, Sound, Meaning and Commercial Impression

Similarity of sight, sound, and meaning is the next "pivotal" factor in the reverse confusion analysis. *Dreamwerks*, 142 F.3d at 1130. Again, Poquito Mas tries to reduce the comparison to the common word "mas", eschewing sight, sound, meaning and commercial impression. Plaintiff ignores the marks *as a whole* but this

---

[11]  Another repeated Poquito Mas mischaracterization is that Taco Bell "rebranded".  Pl. Br. at 4.  Companies "rebrand" when they change their corporate name (such as "Esso" changing to "Exxon" in the 1970s).  But Taco Bell still operates under the same TACO BELL name it has used for 52 years.  PM SUF ## 56, 58, 62-63.  What Taco Bell in fact did was to re-examine and reposition its advertising image, in the process, introducing a new advertising tagline.  Calman Decl. Exs. 126 at 95:13-96:17; 127 at 80:8-86:2.

13

Court must compare the actual marks "as they are encountered in the marketplace" (*Sleekcraft*, 599 F.2d at 351), not as individual components divorced from the whole.

Plaintiff claims that the parties "share use of the word 'MÁS' as a dominant element in their marks" (Pl. Br. at 14-15), but it never explains why "MÁS" is "dominant" in either mark, and the cases it cites as support shed no light on the question. "MÁS" appears in both Poquito Mas's and Taco Bell's marks in the same size as the accompanying words, and the translation of "mas" *i.e.* more, is a distinctly non-descriptive adjective. As the Trademark Trial and Appeal Board said comparing POQUITO MAS to UNA MAS, "mas" is "not so significant that it dominates the mark."[12] *McCarney*, 2004 WL 240310, at *3.

As to commercial impression, plaintiff cryptically argues that "the use of one mark may constitute a legal equivalent of another mark if it is an immaterial variation and creates the same continuing commercial impression" (Pl. Br. at 15), citing *HGI Marketing Servs., Inc. v. Pepsico Inc.*, 50 F.3d 14 (9th Cir. 1995), a case involving the "tacking" of two similar trademarks belonging to the same company for the purpose of determining the date of first use of the second iteration. But the concept of "continuing commercial impression" in that context has no application to two marks owned by different owners in the likelihood of confusion context. In any event, Poquito Mas cannot credibly argue that "LIVE MAS" is an "immaterial variation" on any of its marks without falling back on its claim that it somehow owns "mas", regardless of how it is used and whatever other words or symbols accompany it.

Finally, plaintiff flouts case law and common sense by claiming that the parties' marks "literally mean nothing in the context used." Pl. Br. at 15. The marks are not coined words: Poquito Mas *does* have a meaning; it means "LITTLE MORE" or "A LITTLE MORE" in Spanish, as plaintiff's website and McCarney's trademark

---

[12] Contrary to plaintiff's arguments as to the relevance on the prior UNA MAS proceeding (PM Evid. Obj. at 20), Una Mas is not a single restaurant but a chain of similar size to Poquito Mas. More importantly, to the extent plaintiff argues changed circumstances, *nothing* has changed about the conceptual analysis of plaintiff's mark.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

registrations make clear. Sullivan Decl. Ex. 20; Calman Decl. Ex. 124. LIVE MÁS also has a meaning, as Taco Bell's registrations state; it means "LIVE MORE." Sullivan Decl. Ex. 99. Courts look at the plain meanings of marks as a whole. *See, e.g.*, *Stark v. Diageo Chateau & Estate Wines Co.*, 907 F. Supp. 2d 1042, 1057 (E.D. Cal. 2012) (STARK RAVING and STARK THIRST on wine bottles communicate different meanings: "totally crazy" and "totally and completely thirsty").

### 7. Poquito Mas and Taco Bell Both Serve Mexican-Inspired Food but They Are Not Direct Competitors Even in Los Angeles County

Plaintiff tries to cast Taco Bell and Poquito Mas as direct competitors, both serving "traditional Mexican food" and both serving "fast food."[13] It is not surprising that Poquito Mas considers Taco Bell a competitor; Poquito Mas identifies *every* restaurant as a competitor. Sullivan Ex. 37 at # 19. Taco Bell, for its part, does not consider Poquito Mas a competitor [SUF # 56][14] and while Taco Bell serves Mexican *inspired* food, its menu includes Doritos Locos Tacos (tacos with *Doritos*®-flavored shells), Waffle Tacos (waffles filled with scrambled eggs, bacon and cheese), and the Brownie Sandwich – none of which are remotely traditional to Mexico!

### C. Knowledge of Another's Marks Does Not Equate with Knowledge of Infringement or Indicate Bad Faith

Plaintiff argues in its "evidentiary objections" that Taco Bell's good faith is irrelevant on this motion. It is not. While good faith is not a defense to a claim of trademark infringement, since Poquito Mas claims that Taco Bell's knowledge of Poquito Mas's marks before it adopted "LIVE MÁS" constitutes bad faith, evidence

---

[13] Poquito Mas has previously shied away from the "fast food" label; it uses the registered trademark "WE DON'T SERVE FAST FOOD; WE SERVE FRESH FOOD AS FAST AS WE CAN." SUF # 8.

[14] To try to create an issue as to Taco Bell's view on point, plaintiff cites two Taco Bell presentations over the course of a decade. DMF ## 52-53. The 2011 slide identifies 55 restaurants in various cities visited by a consultant advising Taco Bell on menu pricing strategy. Calman Decl. Exs. 126 at 151:4-153:9; 129 at 51:11-54:1. The 2004 presentation (DMF # 52) involved a team visiting 22 Mexican fast-food, fast casual, and casual restaurants (apparently chosen for geographic proximity) to see where Taco Bell's nachos fit in with the Mexican restaurant landscape in general. That scanty evidence does not create a material issue of fact on this *Sleekcraft* factor.

15

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

showing that defendants did not act in bad faith and acted on the advice of counsel[15] is directly relevant. Indeed, *McCarthy* labels an entire section heading "*Mere Awareness of Senior User is Not Evidence of an Intent to Confuse*" (4 *McCarthy* § 23:115, at 23-450), and courts have held that awareness of the existence of the senior user can be fully consistent with good faith. [16]

Of course, Taco Bell and FCB were aware of the existence of Poquito Mas and of its trademark registrations and that is why they did not proceed with the proposed tagline "*Live a Little Más*" ("LALM"). But they also believed that the problem was the combination of the words "little" and "más"; they simply did not believe that McCarney's objection was or could be to any use of the word "más" in connection with a tagline. As Ray Weston, Taco Bell's General Counsel testified:

> Q:  At this point in time in the January/February 2012 time frame, did you perceive that there could be an issue with Mr. McCarney regarding "Live Más"?
> A: No.
> Q:  Did you perceive that Mr. McCarney may object to Taco Bell using "Live Más"?
> A:  Never.  In fact, we all thought Mr. McCarney would be happy that we had changed to "Live Más," which even though our trademark lawyers had advised us we could use, it still did not have the words "Little" and "Más" in it, which sort of matched up with his mark of "Poquito Más." But "Live Más" is so completely different no trademark lawyer in his right mind would think that there was any infringement there.  And we thought Mr. McCarney would be like, wow, they actually did the right thing.  I objected to it, and even though they thought they had the right to use it,

---

[15]  For at least the fourth time, plaintiff argues that Taco Bell should be precluded from relying on the advice of counsel defense because of its supposed delay in asserting it. PM Evid. Obj. at 3-6. On three occasions, Magistrate Judge Rosenbluth rejected that contention, and this Court affirmed her most recent decision. There is no basis for this argument and it is contrary to the applicable law, as previously briefed and decided.

[16]  *See Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1565 (Fed. Cir. 1987) ("[A]n inference of 'bad faith' requires something more than mere knowledge of a prior similar mark. That is all that the record here shows."); *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 166 (2d Cir. 2004) (It is error to infer "bad faith" merely from knowledge of a senior user's mark. "Prior knowledge of a senior user's mark does not, without more, create an inference of bad faith."); *Personeta, Inc. v. Persona Software, Inc.*, 418 F. Supp. 2d 1013 (N.D. Ill. 2005) (Seventh Circuit cases do not infer intent merely from knowledge of the senior user; preliminary injunction granted).

16

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

they decided to use something else anyway.

Calman Decl. Ex. 128.

All of the evidence establishes Taco Bell's good faith belief, at the time that it adopted the LIVE MÁS tagline, that that mark did not conflict with the rights of Poquito Mas or for the matter anyone else.  As *McCarthy* concludes:

> "If counsel gave objectively reasonable advice that there was no conflict and defendant relied on that advice, it would seem that defendant's intent was to *avoid* likelihood of confusion."

4 *McCarthy* § 23:117, at 23-453 (emphasis in original) (citing *Parenting Unlimited, Inc. v. Columbia Pictures Television, Inc.*, 743 F. Supp. 221, 230 (S.D.N.Y. 1990); *Michael Caruso & Co. v. Estaetan Enters. Inc.*, 994 F. Supp. 1454, 1462 (S.D. Fla. 1998)).

## 1. There Was Nothing "Careless" About Taco Bell's Decision To Adopt The Live Más Tagline

In a reverse confusion case, the junior user is not trying to trade upon the goodwill of the senior user, so the intent to free ride is irrelevant.  *Brookfield*, 174 F.3d at 1059; 4 *McCarthy* § 23:10. "Rather, courts should ask whether, despite acting innocently, the junior user 'was careless in not conducting proper research to avoid infringement prior to development of its trademark.'" 4 *McCarthy* § 23:10, at 23-82 (citing *Mars Musical Adventures, Inc. v. Mars, Inc.*, 159 F. Supp. 2d 1146, 1152 (D. Minn. 2001)). To the contrary of carelessness, the undisputed facts establish that Taco Bell and FCB were extremely careful at every step along the way.

First of all, they did not just proceed willy-nilly with their proposed tagline of choice, LALM. They consulted attorneys. SUF ## 102-104, 107-110. Plaintiff faults Taco Bell and FCB for deciding that they wanted to use what Poquito Mas terms "a MAS slogan" before conducting due diligence (Pl. Br. at 4), but why would a company do due diligence on a proposed mark *before* it decided that it want to use it? Once Taco Bell expressed interest in LALM, FCB approached Winston & Strawn and that firm concluded, based on a preliminary search, that LALM was not available

because of Poquito Mas's registered POQUITO MAS mark. SUF ## 79, 82.[17]

Six weeks later, when Taco Bell learned of Winston & Strawn's opinion, it did not just ignore that opinion and adopt the LALM mark in spite of it. Rather, Mr. Weston reached out to an experienced trademark counsel at Yum, Eliane Setton, who reached the contrary opinion based on her review of a full trademark search.[18] Sullivan Decl. Ex. 75. Even then, given the conflict between those opinions, Setton reached out to an independent law firm, Fross Zelnick, for its opinion. SUF # 103. That firm likewise concluded LALM was available for use. SUF # 104. Next, on or about January 30, Weston and Setton had a conference call with Davis of IPG (FCB's parent company) and one of the Winston & Strawn lawyers, to explore these differing conclusions about LALM. Calman Decl. ## 125 [Davis Tr.] at 47:14-51:25]; 128 [Weston Tr.] at 89:3-90:17. Setton then went back to Fross Zelnick to assess the impact of FCB's approach to McCarney, sending them underlying email chains comprising dozens of communications. SUF ## 107-109.

Most importantly, even then, Taco Bell did not adopt LALM based on those opinions because of McCarney's objections and in what ultimately proved to be an unsuccessful attempt to avoid a lawsuit. It went back to the drawing board and, together with FCB, came up with numerous other proposed taglines. When they chose LIVE MÁS, they did not just rely on the existing opinions on LALM, but once again reached out for opinions from Yum trademark counsel and Fross Zelnick, and

---

[17] Contrary to Poquito Mas's claim, Winston & Strawn did not "flag[] Taco Bell's proposed new MAS marks as presenting a significant risk of a complaint" (Pl. Br. at 4); it reached differing conclusions on the various proposed taglines including the word "mas" that it was asked to consider. Sullivan Decl. Ex. 65.

[18] Conducting a trademark search may be regarded as evidence of good faith adoption of a mark, even if that search reveals the existence of an earlier mark. *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373 (2d Cir. 2005). In addition, the fact that Taco Bell obtained a registration for LIVE MAS also bars any claim of bad faith as a matter of law. *See Trovan, Ltd. v. Pfizer, Inc.*, 2000 WL 709149, at *25-26 (C.D. Cal. May 24, 2000) ("[D]efendant's trademark registration with the Patent and Trademark Office provides prima facie evidence that its use of the mark Trovan was not only permissible, but also in good faith. . . . Having before it the defendant's registration, and no evidence to indicate defendant obtained this registration in bad faith, the jury could not have rendered a verdict of bad faith based on this evidence.").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

FCB did its own investigation through its trademark attorneys.[19]  Everyone was on the same page:  LIVE MÁS was clear for use.  SUF ## 113-117, 120.

This is clearly not a case where, as plaintiff would have it, Taco Bell was determined to forge ahead "Butch Cassidy style" trampling plaintiff's rights. Pl. Br. at 17. Contrary to plaintiff's mischaracterization, "we believe [LALM] could be successfully defended" (Sullivan Decl. Ex. 84) is not equivalent to "crush the much smaller plaintiff in any litigation" (PM Evid. Obj. at 8). If that were true, Taco Bell would have proceeded to use "Live a Little Más", its favored tagline, but it did not. Rather than acting carelessly, Taco Bell and FCB checked and double checked, and all of the lawyers cleared LIVE MÁS, and that is the mark Taco Bell adopted.

> ## 2.    There Was Nothing "Manufactured", "Pre-Cleared", "Superficial", or "Incompetent" About The Attorneys' Opinions Taco Bell Received Before Adopting The Live Más Tagline

Poquito Mas's only other argument actually addressed to Taco Bell's decision to proceed with "LIVE MÁS" is the argument that the opinions on which Taco Bell relied in proceeding are, as plaintiff variously categorizes them, "superficial," "precleared," "manufactured," "not objective," "purchased", and "incompetent." Pl. Br. at 5, 24 n.12; DMF ## 107, 115. Notwithstanding the inflammatory adjectives, there is no evidence at all in the record that Yum or Taco Bell told Fross Zelnick what to say, what conclusion to reach, or "shopped" for a "favorable" opinion.

According to Poquito Mas, the only "competent" opinion was the Winston & Strawn preliminary or knockout search.  PM Evid. Obj., p. 7. Apparently, Poquito Mas's definition of "competent" is an opinion that agrees with its own ultimate

---

[19]  Poquito Mas claims that there is "evidence in the record that the later opinions received by Taco Bell were merely meant to obtain indemnification and the resulting insurance coverage" (PM Evid. Obj. at 8), but it cites no such evidence. Since the Winston & Strawn opinion counseled against use of LALM, and the Yum and Fross Zelnick opinions reached the opposite conclusion, Taco Bell and FCB did discuss whose responsibility it would be to indemnify, if Taco Bell proceeded with LALM and McCarney sued.  SUF # 149.  But those communications simply ceased when the parties moved on and decided to adopt a mark that no one believed in any way infringed Poquito Mas's (or anyone else's) rights.

TACO BELL'S REPLY IN SUPPORT OF TACO BELL'S
MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

conclusion. To say the opinions here are "incompetent" simply because Poquito Mas disagrees with them, does nothing to advance the analysis of whether Weston justifiably relied on them. [20]  And once again, Taco Bell did *not* use LALM.  As for the charge of "superficiality," while a superficial opinion letter with no analysis undermines claim of good faith (*Bear U.S.A. v. A.J. Sheepskin & Leather Outerwear*, 909 F. Supp. 896, (S.D.N.Y. 1995)), the opinions were detailed; investigated Poquito Mas's marks and its restaurants; compared the respective marks in sight, sound, meaning, and overall commercial impression; explored and rejected the idea that Poquito Mas had a family of marks; considered other common law marks and domain names including mas or combinations of "live" and "more" and variants thereof; explored the many actual uses of and registrations including the word "mas" for restaurant services and related classes; considered all of the *Sleekcraft* factors; and assessed the TTAB's findings in the UNA MAS proceedings.  Poquito Mas may disagree with the conclusions in those opinions, but even if it is right, that does not make them "superficial" or unworthy of Taco Bell's reliance.

### III. POQUITO MAS HAS NOT CREATED A JURY ISSUE ON THE RELIEF IT SEEKS

Poquito Mas does not dispute that its sales have only *increased* since the tagline was introduced.  *See* SUF # 140.  Faced with that absence of any demonstrable actual injury,[21] Poquito Mas misstates both the facts and the law in a

---

[20] Plaintiff also claims that Weston is not competent to testify as to the advice he received, because that testimony is hearsay (PM Evid. Obj. at 8-9 (Weston ¶¶ 5, 6, 8, and 10)).  But what is relevant here is Taco Bell's state of mind in proceeding with the LIVE MÁS mark.  Weston gave his client the go-ahead to proceed with that tagline based on these opinions.  Weston Decl. ¶¶ 9-13.  Surely he is competent to testify as to his own state of mind.  These opinions are not offered to prove that they are right (which is the function ultimately of this Court and/or the jury), but rather to establish that Taco Bell fully believed that it was acting on the advice of counsel.

[21] Poquito Mas mentions "substantial litigation costs" in support of its claim for damages (Pl. Br. at 19), but litigation costs are not part of a trademark damages analysis. *See Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) ("It is therefore clear that the amounts CIHD was alleging as damages were simply costs of litigation. No authority suggests that a plaintiff's time spent in litigation over trademark infringement is compensable as damages for the

20

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

last ditch effort to save its claims for corrective advertising, a reasonable royalty, and disgorgement of Taco Bell's profits. Stripped of plaintiff's habitual overzealous advocacy, there is no support for an award of any of these remedies.

## A. Plaintiff's Lack of Non-Speculative Evidence Bars Its Corrective Advertising Claim

Poquito Mas concedes, as it must, that corrective advertising is a compensatory award that is intended to make the plaintiff whole. Pl. Br. at 21. The law is clear that plaintiff "must present *non-speculative evidence* that goodwill and reputation—that is, the value of its mark—was damaged in some way." *Quia Corp. v. Mattel Inc.*, 2011 WL 2749576, at *5 (N.D. Cal. July 14, 2011) (emphasis added). *See also* Init. Br. at 22-23; *S. Cone, Inc. v. Timex Corp.*, 2002 WL 34450329, at *1 (S.D. Cal. Apr. 10, 2002) (because there was "no evidence or knowledge" of decreased value of plaintiff's mark, "any suggestion that an award of corrective advertising in a particular amount is appropriate is impermissible speculation").

The little support Poquito Mas offers for its claim is precisely the kind of speculative evidence that is insufficiently tethered to the corrective advertising award it seeks. Plaintiff points to its expert's conclusion that "[i]t will require a herculean effort for a small company like Poquito Mas to reclaim its singular identification with the "Mas" marks." Pl. Br. at 22. That is not even close to providing a "reasonably accurate measure with which to assess an appropriate award." *Binder v. Disability Grp. Inc.*, 772 F. Supp. 2d, 1172, 1180 (C.D. Cal. 2011). Nor does a claim of a generalized "negative impact on Poquito Mas" resulting from the alleged cessation of negotiations with Branstetter. Pl. Br. at 23.[22] That claim is based on the "the

---

infringement. The district court was therefore correct in granting summary judgment to the appellants on CIHD's claim for damages.").

[22] This argument is entirely inconsistent with McCarney's prior deposition testimony that Taco Bell's use of the LIVE MÁS tagline was not a factor in any venture capitalist's decision not to fund an expansion of Poquito Mas. (TB SUF # 143). As such, McCarney cannot create an issue of fact on point sufficient to defeat summary judgment. *See SEC v. Wilde*, 2012 WL 6621747, at *11 (C.D. Cal. Dec. 17, 2012) (Carter, J.) ("a party cannot manufacture an issue of fact by providing

TACO BELL'S REPLY IN SUPPORT OF TACO BELL'S
MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

uncertainty of the impact of Taco Bell's "LIVE MÁS" campaign on the POQUITO MÁS brand and the ongoing litigation between Taco Bell and Poquito Mas" and an unspecified effect on "Poquito Mas's ability to effectively continue negotiations." DMF # 152. Uncertainty and unnamed effects, even if they constituted a negative impact and even if not contrary to McCarney's earlier sworn testimony, are precisely the kind of speculative harm for which a corrective advertising award is inappropriate. *See* Calman Decl. Ex. 130 at 47:24-48:2; 95:3-6.

Perhaps because it lacks any specific evidence of damage to its goodwill and reputation (the kind of damage a corrective adverting award is supposed to redress), Poquito Mas points to law outside the Ninth Circuit addressing the presumption of injury that arises out of a finding of infringement for purposes of injunctive relief. *See* Pl. Br. at 23.  Not only is any such presumption invalid post-*eBay* and *Winter* (see Init. Br. at 24-25), it is also completely inconsistent with the requirement of a *specific* showing necessary for a corrective advertising award, as this Court held in a similar attempt to apply such a presumption to damages to goodwill.  *See Quiksilver*, 2013 WL 1953719, at *6 (assertions regarding control over the brand as evidence of damages to goodwill were "conclusory and speculative").

## B. Plaintiff's Lack of Non-Speculative Evidence Also Bars Its Reasonable Royalty Claim

Poquito Mas concedes that there must be a "legitimate proposed basis on which to calculate" a reasonable royalty award, and that such award may not be impermissibly speculative.  *See* Pl. Br. at 20.[23]   In the absence of a history of licensing its trademarks or a price negotiation with Taco Bell and/or FCB, Poquito Mas tries to shoehorn the scanty record here into the framework which supported a

---

an affidavit that contradicts prior sworn testimony") (citing *Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009)).

[23] Contrary to Poquito Mas's claim that Louis Berneman, Taco Bell's expert, agrees that a reasonable royalty is an appropriate remedy (Pl. Br. at 21), he actually concluded: "Mr. Phillips [Poquito Mas's expert] has not demonstrated that a reasonable royalty rate is a proper measure of damages in this case, because his premises for that conclusion are significantly flawed."  Blakely Decl. Ex. 99.

22

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

reasonable royalty in *Quiksilver*.  But its reliance on that case is wholly misplaced.

In *Quiksilver*, this Court relied on the fact that the parties had engaged in "detailed and lengthy purchasing negotiations" over the VISITOR mark at issue that had taken place for "nearly two years."  2013 WL 1953719, at *5.  As such, there was sufficient information so as to provide "reasonable certainty" for a royalty award.  *Id.*  Here, in contrast, the extent of "negotiations" was two or three phone calls and one brief meeting that that took place over the course of two months. *See* PM SMF ## 73-77, 85, 94, 97, 99.   There, the parties agreed that a license would have been possible, but they were ultimately unable to come to an agreement as to *price* following multiple offers and counteroffers. 2013 WL 1953719, at *1, *5. Here, the only monetary discussion was Santoni's $35,000 offer for co-existence, which McCarney rejected without negotiation (Calman Ex. 130 at 215:1-217:20); there was no subsequent exchange of offers that could establish the parameters for a reasonable range of fees.  Rather, Poquito Mas decided that it would not license its marks *at all*.  McCarney Decl. Ex. 42.  Poquito Mas now claims that it "remains open to licensing 'out' its MAS marks" (Pl. Br. at 20), but at his deposition, McCarney testified that he was firm in his belief that he was not going to license his marks. *See* Calman Decl. Ex. 130 at 215:11-18 (he told the investigator "It's my brand. It's a mark. This is my life. I have no plans to license it to anybody else."); *id* at 217:9-12 (in response to Santoni's question, 'Why is it just a flat no?' . . . I said, 'Because I don't want to license the mark.'").  As stated *supra* (see p. 21-22, n. 22), Poquito Mas cannot manufacture an issue of fact contrary to prior sworn testimony.

McCarney's deposition testimony is fully consistent with Poquito Mas's history of *never* in its 30 years history having licensed any of its marks to anyone other than to its franchisees as part of the entire franchise arrangement.  SUF # 144.  Poquito Mas argues that there is no difference between licensing any of its marks by themselves and licensing them in the context of a franchise agreement, but its franchisees do not pay a separate royalty for use of Poquito Mas's trademarks (SUF # 17), and plaintiff makes

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

no attempt, either through McCarney or an expert, to provide a rationale for allocating a portion of the franchise fee to the right to use the marks.

## C.   Disgorgement of Taco Bell's Profits Would Result in an Impermissible Windfall

Once again, Poquito Mas casts its net outside of the Ninth Circuit to find support for its proposition that under the 1999 revisions to the Lanham Act, it need not demonstrate willfulness to obtain disgorgement of Taco Bell's profits.  Pl. Br. at 23-24.  The Ninth Circuit has not adopted that a reading of the Act,[24] and any award must therefore be consistent with the Ninth Circuit's admonition to lower courts that "an accounting of profits is not automatic and must be granted in light of equitable considerations" and its caution that the "Plaintiff is not entitled … to a windfall." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993) (citations omitted).  Accordingly, recent cases have affirmed that disgorgement of profits is only available in a reverse confusion case when there is evidence the junior user intended to exploit the goodwill of the senior mark. *E.g.*, *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp. 2d 830, 848-49 (C.D. Cal. 2012).

As discussed above, Taco Bell adopted the LIVE MÁS mark in good faith and in reliance on the advice of counsel.  SUF ## 82, 116-117, 120; Init. Br. at 18-19; *supra* at pp. 15-20.  The intent factor to determine likelihood of confusion under *Sleekcraft* and the willfulness requirement for disgorgement of profits, differ significantly. In analyzing the intent factor in reverse confusion cases, defendant's negligence may be sufficient to weigh in favor of plaintiff. *See SunEarth, Inc. v. Sun Earth Solar Power Co.*, 2013 WL 4528539, at *16 (N.D. Cal. Aug. 23, 2013) ("[T]he relevant inquiry to determine intent was whether, despite acting innocently, the alleged infringer was careless in not conducting proper research, to avoid

---

[24] As *McCarthy* opines, "the 1999 amendment of Lanham Act § 35(a) was not intended to change the law by removing willfulness as a requirement for an award of profits in a classic infringement case" and courts reading it as such "have leveraged this statutory change beyond its intended scope."  5 *McCarthy* § 30:62, at 30-171.

24

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

infringement, prior to development of its trademark or trade dress."). In contrast, disgorgement of profits requires a finding that the defendant's actions were "willfully calculated to exploit the advantage of an established mark." *Id.* at *21 (citing *Lindy Pen*, 982 F.2d at 1407). Thus, as courts have concluded, "[t]o the extent that Plaintiffs argue that disgorgement is available under the circumstances here in a reverse confusion case, where Defendants negligently failed to investigate senior rights before adopting a mark but did not willfully infringe, this cannot be reconciled with the language of *Lindy Pen*." *Id.* Consequently, infringing profits are not available to Poquito Mas on a disgorgement theory.

## D. There Is No Presumption of Injury for Injunctive Relief

Poquito Mas relies on outdated law for the proposition that irreparable injury is presumed for purposes of injunctive relief if infringement has been shown. Pl. Br. at 24. This is no longer good law. *See* Init. Br. at 24-25. As discussed above, Poquito Mas has failed to demonstrate any actual injury, let alone any irreparable injury. A permanent injunction would therefore be inappropriate.

## IV. CONCLUSION

The consummate absence of actual confusion in three years of coexistence; the differences in sight, sound, meaning and commercial impression between and among the marks; the conceptual weakness of Poquito Mas's marks; the reasonableness of Taco Bell's decision not to proceed with LALM but rather to adopt a mark that it did not believe infringed; all lead inexorably to the conclusion that there is neither a likelihood of forward nor reverse confusion in this case, that no jury could find otherwise, and that defendants should be granted summary judgment dismissing the complaint in its entirety and awarding them attorneys' fees and costs.

TACO BELL'S REPLY IN SUPPORT OF TACO BELL'S MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Respectfully submitted,

DATED:  December 29, 2014   DAVIS  WRIGHT  TREMAINE  LLP
SEAN M. SULLIVAN
MARCIA B. PAUL (admitted pro hac vice)
LACY H. KOONCE, III (admitted pro hac vice)
CAMILLE CALMAN (admitted pro hac vice)


By:_____/s/ Sean M. Sullivan_____
            Sean M. Sullivan


Attorneys for Defendants and Counter-Plaintiffs
TACO BELL CORP. and FCB WORLDWIDE, INC.

TACO BELL'S REPLY IN SUPPORT OF TACO BELL'S
MOTION FOR SUMMARY JUDGMENT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899